1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CHRISTOPHER MOSQUEDA,            )   NO. EDCV 11-1544(SS)
                                      )
12                    Plaintiff,      )
                                      )
13          v.                        )   **MEMORANDUM DECISION AND ORDER**
                                      )
14   MICHAEL J. ASTRUE,               )
     Commissioner of the Social       )
15   Security Administration,         )
                                      )
16                    Defendant.      )
     _____)

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Plaintiff Christopher Mosqueda ("Plaintiff") brings this action

22   seeking to reverse and remand the decision of the Commissioner of the

23   Social Security Administration (the "Commissioner" or the "Agency")

24   denying his application for Supplemental Security Income ("SSI")

25   benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the

26   jurisdiction of the undersigned United States Magistrate Judge.  For the

27   reasons stated below, the decision of the Agency is REVERSED and

28   REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

Plaintiff applied for SSI benefits on June 30, 2004. (AR 38-41). After the application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") heard the case on September 26, 2005. (AR 200-10). On December 9, 2005, the ALJ denied benefits. (AR 17-25). Plaintiff sought Appeals Council ("AC") review and on March 8, 2006, the AC remanded the case for further proceedings. (AR 12-14). The Office of Hearings and Appeals held an additional hearing on March 21, 2007. (AR 361-83). On April 4, 2007, the ALJ denied benefits again. (AR 215-24). Plaintiff sought review, which was denied. (AR 211-13). He then sought judicial review in Mosqueda v. Astrue, EDCV 09-1393 SS. On June 30, 2010, this Court remanded the case for further consideration at step two regarding the preparation of a Psychiatric Review Technique Form ("PRTF"). (AR 408-12). On remand, a different ALJ held a hearing on May 4, 2011. (AR 438-69). The ALJ denied benefits in a July 13, 2011, decision. (AR 384-93). On September 26, 2011, Plaintiff filed the instant action.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him

from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

_____

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

1     (5)   Is the claimant able to do any other work?  If not, the
2           claimant is found disabled.  If so, the claimant is
3           found not disabled.

4

5  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
6  949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920(b)-
7  (g)(1).

8

9       The claimant has the burden of proof at steps one through four, and
10 the Commissioner has the burden of proof at step five.  Bustamante, 262
11 F.3d at 953-54.  If, at step four, the claimant meets his burden of
12 establishing an inability to perform the past work, the Commissioner
13 must show that the claimant can perform some other work that exists in
14 "significant numbers" in the national economy, taking into account the
15 claimant's residual functional capacity ("RFC"),[2] age, education and
16 work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).
17 The Commissioner may do so by the testimony of a vocational expert or
18 by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.
19 Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
20 Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a
21 claimant has both exertional (strength-related) and nonexertional
22 limitations, the Grids are inapplicable and the ALJ must take the
23 testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869
24 (9th Cir. 2000).
25 \\
26 \\
27
28      [2] Residual functional capacity is "the most [one] can still do
despite [his] limitations" and represents an assessment "based on all
the relevant evidence."  20 C.F.R. § 416.945(a).

4

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since June 30, 2004, his application date. (AR 389). At step two, the ALJ found that Plaintiff has the following medically determinable impairments: schizoaffective disorder[3] and a history of drug and alcohol abuse. (AR 389). The ALJ determined that these impairments have not (and are not expected to) significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months. (AR 389). Thus, the ALJ concluded that Plaintiff does not have a severe impairment or combination of impairments. (AR 389).

In his decision, the ALJ noted that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (AR 390). However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms "are not credible to the extent they are inconsistent with finding that the [Plaintiff] has no severe impairment or combination of impairments . . . ." (AR 390). The ALJ gave "great weight" to non-examining medical expert Dr. Kania, who opined that Plaintiff's medical impairment caused only mild limitations on activities of daily living, social functioning, and concentration,

---

[3]     Schizoaffective disorder is a condition related to, characterized by, or exhibiting symptoms of both schizophrenia and bipolar disorder. MiriamWebster's Online Dictionary http://www.merriam-webster.com/medical/schizoaffective?show=0&t=1347298404 (last visited Sep. 10, 2012).

5

1   persistence, or pace.  (AR 390).  The ALJ also deferred to Dr. Kania's
2   determination that Plaintiff suffered no episodes of decompensation.
3   (AR 390).

4

5       The ALJ discounted the findings of treating physician Dr. Kunam
6   that Plaintiff has "mostly marked to extreme limitation, is not a
7   malingerer, and would need to miss three or more days of work per
8   month."  (AR 391).  The ALJ noted that Dr. Kunam's evaluation lacked
9   credibility because it "gave considerable weight to the [Plaintiff's]
10  complaints."  (AR 392).  The ALJ gave great weight to Dr. Smith's
11  psychiatric assessment, relying on her three separate evaluations of the
12  Plaintiff between August 2004 and January 2007. (AR 391). Based on Dr.
13  Smith's findings, Plaintiff's treatment records, and other testimony,
14  the ALJ concluded that Dr. Kunam's assessment was unjustified.  (AR
15  391).  The ALJ noted that ALJ Varni had found that Plaintiff was
16  "unpersuasive" at the remand hearing and that Plaintiff's treatment
17  records and vague testimony failed to support the alleged symptoms. (AR
18  391-92).

19

20      The ALJ concluded that Plaintiff's medically determinable mental
21  impairments cause no more than "mild" limitation in the first three
22  functional areas and "no" episodes of decompensation per 20 C.F.R.
23  416.920c.  (AR 292).  Thus, the ALJ determined that Plaintiff does not
24  have a severe impairment, making it unnecessary to proceed to step
25  three.  (AR 392-93).
26  \\
27  \\
28  \\

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u>  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21.

**VI.**

**DISCUSSION**

Plaintiff contends the ALJ erred for several reasons: (1) the ALJ did not apply the correct rule of law nor does the medical evidence provide substantial evidence for the step two finding, (Memorandum of

1    Points and Authorities in Support of Plaintiff's Complaint ("PC");
2    (2) the ALJ failed to consider Mary Helen Mosqueda's July 2004
3    statements, (PC at 2); (3) the ALJ did not properly consider Plaintiff's
4    credibility.  (PC at 2).
5
6        The Court agrees with all of Plaintiff's grounds for remand.  For
7    the reasons discussed below, the Court finds that the ALJ's decision
8    should be reversed and this action remanded for further proceedings.
9
10   **A.   The ALJ Erred At Step Two By Concluding That Plaintiff's Mental**
11        **Impairment Was Not Severe**
12
13       Plaintiff argues that the ALJ erred in finding that his mental
14   impairment was not severe.  (PC at 2).  Plaintiff argues that even
15   though Plaintiff was treated for mental illness from April 2004 through
16   May 2011, (id. at 3), the ALJ failed to explain how he determined that
17   Plaintiff had an mental impairment lasting less than twelve months, and
18   that at the very least such a determination requires further fact
19   finding.  (Id.).  Furthermore, Plaintiff argues that the ALJ failed to
20   include "sufficiently detailed findings" to show that he reached his
21   conclusions after considering significant evidence.  (Id.).  Plaintiff
22   also contends that the ALJ failed to conduct the severity analysis using
23   "affirmative evidence of non-severity" that is "clearly established by
24   medical evidence."  (Id. at 4).  Finally, Plaintiff argues that the ALJ
25   improperly applied the de minimis standard at step two, which requires
26   a showing that a claim is "groundless" before discontinuing the
27   sequential evaluation analysis.  (Id. at 4-6).  As there was significant
28   evidence in the record of a severe mental impairment, the Court finds

that the ALJ failed to properly assess Plaintiff's mental impairment at step two.  The Court notes that the prior ALJ found "a very questionably severe mental impairment."  (AR 23).

By its own terms, the evaluation at step two is a de minimis test intended to weed out only the most minor of impairments.  See Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims) (quoting Smolen, 80 F.3d at 1290).  An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work.  Smolen, 80 F.3d at 1290.

The ALJ applied more than a de minimis test in determining that Plaintiff's mental impairment is not severe.  Moreover, this error was not harmless because after the ALJ improperly found the impairment non-severe, the ALJ failed to adequately address the remaining steps of the Secretary's regulations governing mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[4] Maier v. Comm'r Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)

_____

[4] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed analysis.  Social Security Ruling 98-8p, 1996 WL 374184, at *4.

1  (citing 20 C.F.R. § 416.920a) (per curiam).  First, the ALJ must
2  determine the presence or absence of certain medical findings relevant
3  to the plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1).
4  Second, when the plaintiff establishes these medical findings, the ALJ
5  must rate the degree of functional loss resulting from the impairment
6  by considering four areas of function: (a) activities of daily living;
7  (b) social functioning; (c) concentration, persistence, or pace; and (d)
8  episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4).  Third,
9  after rating the degree of loss, the ALJ must determine whether the
10 claimant has a <u>severe</u> mental impairment.  20 C.F.R. § 416.920a(d)
11 (emphasis added).  Fourth, when a mental impairment is found to be
12 severe, the ALJ must determine if it meets or equals a listing in 20
13 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).
14 Finally, if a listing is not met, the ALJ must then assess the
15 plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent
16 findings and conclusions" regarding the plaintiff's mental impairment,
17 including "a specific finding as to the degree of limitation in each of
18 the functional areas described in [§ 416.920a)c)(3)]."  20 C.F.R.
19 § 416.920a(d)(3), (e)(2).  While the ALJ here, followed these
20 regulations in a perfunctory fashion, the ALJ's failure to recognize
21 Plaintiff's mental impairment as severe undermined the ALJ's application
22 of the regulations.

24     The regulations describe an impairment as follows:

26     A physical or mental impairment must result from anatomical,
27     physiological, or psychological abnormalities which can be
28     shown by medically acceptable clinical and laboratory

1   diagnostic techniques.  A physical or mental impairment must
2   be established by medical evidence consisting of signs,
3   symptoms, and laboratory findings, not only by [a
4   plaintiff's] statements of symptoms.

5

6   20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005
7   (9th Cir. 2005) (noting that the existence of a medically determinable
8   physical or mental impairment may be established only with objective
9   medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187,
10  at *1-2).

11

12  Here, Plaintiff's mental impairment is sufficient to satisfy the
13  de minimis test for severity.  Plaintiff's treating doctor, Syam Kunam,
14  M.D., a board certified psychiatrist, diagnosed Plaintiff with bipolar
15  disorder and schizoaffective disorder.[5]  (AR 174-75).  Plaintiff's
16  mental health treatment records date back to April 2004 and indicate
17  that he was prescribed several medications for schizophrenia, bipolar
18  disorder, depression, anxiety, daily headaches, and insomnia.  (AR 130-
19  145, 188-90, 192-94, 197-99, 304-12, 357, 425-31).  Dr. Kunam noted that
20  Plaintiff has extreme limitations resulting from his impairment and is
21  "totally and permanently disabled."  (AR 174-75; see also 195-96, 359-
22  60).

23

24  Furthermore, Plaintiff reported an inability to maintain his
25  general hygiene as a result of his illness.  (See AR 97-97, 129, 287-

26

27  ───────────
    [5]  The record is unclear as to when the initial diagnoses occurred.
28  However, physicians' notes substantiate Dr. Kunam's bipolar disorder and
    schizoaffective disorder diagnoses on September 17, 2004, and October
    21, 2004, respectively.  (AR 174-75).

88).   Plaintiff also expressed having feelings of paranoia, auditory hallucinations, and delusions.   (See AR 35, 37, 123-24, 127, 129, 203-04, 227, 289-91, 293, 341, 368-72, 445, 451-52).   He asserted that his condition rendered him adverse to leaving his house.   (See AR 37, 119). Finally, Plaintiff admitted that he had attempted suicide and experienced suicidal thoughts.   (AR 31, 34, 36, 127, 372).   As such, the evidence in the record does not support the conclusion that Plaintiff's mental impairment has no more than a minimal effect on his ability to work.

Ultimately, the ALJ denied Plaintiff benefits by according Dr. Smith's psychiatric evaluations greater weight than those of Dr. Kunam. (AR 391-92).   However, the ALJ simply recounted Dr. Smith's findings without explaining in detail why Dr. Smith's testimony should receive greater weight than Dr. Kunam's.   The ALJ failed to set forth specific, legitimate reasons for rejecting Dr. Kunam's impressions. Smolen, 80 F.3d at 1285 (requiring the ALJ to set forth specific, legitimate reasons based on substantial evidence before rejecting treating physicians' opinions).   Furthermore, while the ALJ briefly addressed Plaintiff's degrees of limitation for each of the functional areas outlined in 20 C.F.R. § 404.1520a, he did not explain the rationale for his findings. See Keyser v. Comm'r. Soc. Sec., 648 F.3d 721, 725 (9th Cir. 2011) (requiring ALJ decisions to contain a "narrative rationale," instead of the "checklist of . . . conclusions" found in a PRTF).

As described above, significant medical evidence exists to demonstrate that Plaintiff's mental impairment was severe.   The ALJ, however, applied more than a de minimis test at step two.   (AR 389-92).

12

1  Accordingly, this case must be remanded for further proceedings.  Upon
2  remand, the ALJ must follow the agency's own regulations regarding
3  mental impairments and must incorporate the limitations from Plaintiff's
4  <u>severe</u> mental impairment into the RFC determination.

5

6  **B.    The ALJ Erred By Failing To Consider The July 2004 Statements Of**
7       **Plaintiff's Mother, Mary Helen Mosqueda**

8

9       Plaintiff's mother, Mary Helen Mosqueda, provided a detailed report
10  of Plaintiff's activities of daily living in a form dated July 12, 2004,
11  and a letter dated September 16, 2004.  (AR 30-31, 103-11).  In these
12  statements, Ms. Mosqueda describes her son's erratic behavior and
13  feelings of anxiety.  (<u>See</u> AR 30-31, 103-11).  She maintained that his
14  illness negatively affects his interpersonal relationships, as well as
15  his ability to complete tasks, concentrate, and understand things.  (<u>See</u>
16  AR 30-31, 108).  She noted that Plaintiff takes Prozac, Paxil, Zoloft,
17  Lithum and Sonata regularly, and sometimes twice a day.  (AR 109).

18

19       Friends and family members in a position to observe a claimant's
20  symptoms and daily activities are competent to testify as to the
21  claimant's condition. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir.
22  1993).  If the ALJ chooses to discount lay witness testimony, "he must
23  give reasons that are germane to each witness." <u>Id.</u> at 919.  As
24  explained by the Ninth Circuit,

25

26       [T]he Commissioner's Rulings require the ALJ to consider lay
27       witness testimony in certain types of cases.  SSR 88-13
28       states that where a claimant alleges pain or other symptoms

13

that are "not supported by medical evidence in the file, the
adjudicator shall obtain detailed descriptions of daily
activities by directing specific inquiries about the pain and
its effects to . . . third parties who would be likely to
have such knowledge.  The ruling then requires the ALJ
to give "full consideration" to such evidence.

Smolen, 80 F.3d at 1288 (emphasis in original).  In determining
whether a claimant is disabled, an ALJ must consider lay witness
testimony concerning a claimant's ability to work.  Stout v.
Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006).

Because Ms. Mosqueda is Plaintiff's mother, and lives with him full
time, she is in a position to observe Plaintiff's symptoms and daily
activities.  The ALJ failed to properly consider Ms. Mosqueda's 2004
statements, without providing reasons germane to the witness for
discounting her testimony.[6]  The Court notes that the fact that a lay
witness has a close relationship with the claimant or is related to the
claimant cannot be the sole ground for rejecting lay witness testimony.
See Smolen v. Chater, 80 F.2d 1273, 1289 (9th Cir. 1996).  Because the
ALJ failed to expressly consider Ms. Mosqueda's 2004 statements, this
case must be remanded for further proceedings.  Upon remand, the ALJ
must expressly consider Ms. Mosqueda's 2004 statements, or provide
reasons germane to the witness for not considering them.

---

[6]  The ALJ may not simply incorporate by reference the reasons to
reject Plaintiff's mother's testimony offered by the prior ALJ, as the
prior ALJ's decision was subsequently reversed by the Court's June 30,
2010 order.

1  **C.    The ALJ Erred By Failing To Properly Consider Plaintiff's**
2  **Credibility**

3

4       Plaintiff's third claim is that the ALJ failed to properly consider
5  his testimony about subjective symptoms.  (PC at 2).  The Court agrees.
6  The ALJ improperly relied on testimony presented before Judge Varni in
7  a previously vacated decision.  (AR 391-92).  The ALJ also failed to
8  articulate clear and convincing reasons for rejecting Plaintiff's
9  subjective complaints testimony.

10

11      Evaluating a claimant's credibility involves a two step analysis.
12 First, the ALJ must determine whether the claimant has presented
13 objective medical evidence of an underlying impairment, which could
14 reasonably be expected to produce the pain or other symptoms alleged.
15 Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).
16 However, the ALJ may not reject subjective symptom testimony simply
17 because there is no showing that the impairment can reasonably produce
18 the degree of symptom alleged.  Id. at 1036.  Second, if the claimant
19 meets the first test, and there is no affirmative evidence of
20 malingering, the ALJ can reject the claimant's testimony about the
21 severity of his symptoms only by offering specific, "'clear and
22 convincing'" reasons for doing so.  Carmickle v. Comm'r, Soc. Sec.
23 Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (quoting Smolen, 80 F.3d at
24 1281).  It is insufficient for the ALJ to make only general findings;
25 instead, the ALJ must state which statements in the testimony are not
26 credible and what evidence supports that conclusion.  Dodrill, 12 F.3d
27 at 918.  SSR 88-13 lists a number of factors an adjudicator may consider
28 in assessing a claimant's credibility:

15

1    (1)   The nature, location, onset, duration, frequency, radiation,
2          and intensity of any pain;
3    (2)   Precipitating  and  aggravating  factors  (e.g.,  movement,
4          activity, environmental conditions);
5    (3)   Type, dosage, effectiveness, and adverse side-effects of any
6          pain medication;
7    (4)   Treatment, other than medication, for relief of pain;
8    (5)   Functional restrictions; and
9    (6)   The claimant's daily activities.

See also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Additionally, if the ALJ relies on physician testimony to support an adverse credibility determination of the claimant, the ALJ must accord the treating physician's opinion greater weight over the opinions of non-treating physicians.  See Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007)("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'").  To disregard the opinion of a treating physician, the ALJ must set forth specific, legitimate reasons for doing so based on substantial evidence in the record.  Id. at 632.

     The record contains medical evidence demonstrating that Plaintiff has a severe mental impairment sufficient to satisfy part one of the credibility analysis.  (AR 174-75; see also id. 195-96, 359-60). Evidence of various prescriptions to treat Plaintiff's mental illness supports the existence of such an impairment. (AR 130-45, 188-90, 192-94, 197-99, 304-12, 357, 425-31).   Additionally, Plaintiff's own

testimony regarding his auditory hallucinations, anxiety, and inability to be productive repeatedly corroborates the same. (See AR 35, 37, 119, 123-24, 127, 129, 203-04, 227, 289-91, 293, 341, 368-72, 445, 451-52). Finally, the statements by Plaintiff's mother and brother further support Plaintiff's testimony. (AR 30-31, 103-11, 294-301, 346, 459-65).

Under part two of the credibility analysis, the ALJ found Plaintiff's testimony to be "not credible" because it was inconsistent with the ALJ's conclusion that Plaintiff lacked a severe mental impairment, which this Court has concluded was an erroneous finding. (AR 390; see also id. 392). The ALJ's decision also did not include any affirmative findings of malingering. (See AR 389-92).

Moreover, the ALJ appears to have improperly based his credibility determination on a previously vacated decision, stating that "Judge Varni appropriately discounted the claimant's credibility . . . ." (AR 392). Furthermore, the ALJ relied on the opinions of non-treating physicians, Dr. Kania and Dr. Smith, to support an adverse credibility finding of the claimant, without explaining which statements by Plaintiff are undermined by the doctor's observations. (AR 390-92).

Finally, the ALJ improperly based his credibility determination on non-treating physician Dr. Smith's impression that Plaintiff could perform personal and daily household activities. (AR 391). The mere ability to perform certain simple daily activities is not sufficient, on its own, to support for an adverse credibility finding. For example, the Ninth Circuit found in Orn that the ALJ improperly rejected an obese

1  plaintiff's testimony because the plaintiff was able to perform simple
2  daily activities.  See Orn, 495 F.3d at 639.  In Orn, the fact that the
3  plaintiff could perform simple daily activities did not contradict his
4  other testimony nor did the activities represent transferable work
5  skills.  The ALJ here did not indicate which part of Plaintiff's
6  testimony was contradicted by any testimony regarding daily activities.

8       Thus, the ALJ erred in failing to provide specific, "clear and
9  convincing" reasons for regarding Plaintiff's testimony as "not
10  credible."  (AR 390).  On remand, the ALJ must identify clear and
11  convincing reasons to reject Plaintiff's testimony.  See id.

13  **D.   Remand To A Different ALJ Is Necessary**

15       Remand for further proceedings is appropriate where additional
16  proceedings could remedy defects in the Commissioner's decision.  See
17  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler,
18  722 F.2d 1496, 1497 (9th Cir. 1984).  Because the ALJ improperly
19  evaluated the severity of Plaintiff's mental impairment, the case must
20  be remanded to remedy this defect.  Additionally, the Court concludes
21  that this case should be assigned to a different ALJ.

23       Where an ALJ has rendered a negative credibility determination of
24  the plaintiff, assignment to a different ALJ for unbiased
25  reconsideration is appropriate.  See 20 C.F.R. § 404.940.  The
26  impartiality of the ALJ is fundamental to the integrity of the
27  disability review process.  See Miles v. Chater, 84 F.3d 1397, 1401
28  (11th Cir. 1996); see also Campbell v. Astrue, 2009 WL 3244745 (C.D.

18

1  Cal. Oct. 7, 2009); <u>Reed v. Massanari</u>, 270 F.3d 838, 845 (9th Cir.

2  2001)(remanding to different ALJ for fair consideration of evidence

3  despite no indication of ALJ bias). Here, the ALJ improperly rejected

4  Plaintiff's credibility and failed to properly consider all of the

5  relevant evidence in the record. Thus, remand to a different ALJ is

6  necessary. <u>See</u> <u>Campbell</u>, 2009 WL 3244745, at *10.

7

8  Upon remand the new ALJ must conduct a supplemental evaluation of

9  the mental impairment evidence. Normally, the ALJ must first determine

10  the presence or absence of certain medical findings relevant to a

11  plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). However, this

12  Court has determined that there is objective medical evidence that

13  Plaintiff suffers from a mental impairment relevant to his ability to

14  work. Thus, the ALJ need not address this question. Accordingly, the

15  ALJ must complete only the remaining inquiries required by the

16  supplemental evaluation of mental impairment evidence. <u>See</u> 20 C.F.R.

17  § 416.920a(c)-(e).

18  \\

19  \\

20  \\

21  \\

22  \\

23  \\

24  \\

25  \\

26  \\

27  \\

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.**

**CONCLUSION**


Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED: October 29, 2012

                                        /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE